NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICKOLE COURTS,<br><br>  Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant. | CIVIL ACTION NO. 15-7303 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

## INTRODUCTION

Defendant, the United States of America ("Defendant" or "the Government"), moves to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Dkt. 12.)[1] Plaintiff, Nickole Courts ("Plaintiff") opposes that motion. (Dkt. 13.) The Court, for the reasons that follow, will dismiss the complaint pursuant to Rule 12(b)(1).

## DISCUSSION

**I.    FACTUAL HISTORY**

**A.    The Parties**

Plaintiff "is an individual residing … [in] Asbury Park, New Jersey." (Dkt. 1 at 2.) Defendant is the "United States of America[,]" which Plaintiff claims "is the proper

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

party when bringing a negligence suit against the Federal Agency, the General Services Administration[.]" (Id.)

### B. The Slip and Fall

Plaintiff visited the Social Security Administration Office ("SSAO") in Neptune Township, New Jersey, on or about December 10, 2012. (Id. at 3.) Plaintiff alleges that a "Federal Agency, the General Services Administration[,] leased, operated, possessed, controlled, designed, inspected, constructed, repaired, oversaw, secured[,] and maintained the public areas, including but not limited to, entrances, exits, aisles, flooring, thresholds, exhibits, and fixtures, at the" SSAO. (Id.) Plaintiff fell "on a wet area of flooring" at the SSAO on or about December 10, 2012. (Id. at 3–4.) She claims to have "suffered severe and multiple injuries including, but not limited to, cracked front upper teeth; facial laceration; facial scarring and cognitive losses, any or all of which are permanent in nature, accompanied by great pain and suffering[.]" (Id. at 4.) According to Plaintiff, those injuries: (1) resulted in unforeseen medical expenses; (2) prevented "her from attending to her normal duties and activities"; (3) impaired her earning capacity; and (4) affected her quality of life. (Id.)

### C. The Lease

The General Services Administration ("GSA") leased the SSAO, located at 3310 Route 66, Neptune, New Jersey, "from a private building owner[,]" Claremont Neptune, LLC ("Claremont"). (Dkt. 12-1 at 6.) GSA and Claremont executed a lease agreement (hereinafter "the Lease") on December 5, 2003. (Id. at 7.) "Under the terms of the Lease, Claremont had the responsibility to provide all labor and materials necessary to

perform cleaning and maintenance services for the leased space." (Id.)[2] Specifically,

Paragraph 6.1 of the Lease, titled "SERVICES, UTILITIES, MAINTENANCE:

GENERAL" ("Paragraph 6.1"), stated as follows:

> Services, utilities, and maintenance shall be provided by the Lessor as part of the rental consideration. The Lessor shall have a building superintendent or a locally designated representative available to promptly correct deficiencies.

(Dkt. 12-3 at 29.)

Paragraph 10 of the Lease ("Paragraph 10") set forth details regarding the

"[s]ervices, utilities[,] and maintenance" of the SSAO. (Id. at 3.) Paragraph 10

stated, in relevant part, as follows:

> 10. As part of the rental consideration for the leased premises, the Lessor hereby agrees to proceed with due diligence to provide all labor and materials necessary to perform the following:
>
> A. Services, utilities and maintenance as set forth in this lease, and as follows:
>
> (i) The cleaning and maintenance services shall be performed during normal working hours for all the leased space. Hours for this office shall be from 7:00 am to 6:00 pm.

(Id.)

The Lease adopted terms to govern the janitorial services provided and monitored

by Claremont. (Id. at 29–30.) Paragraph 6.6.D of the Lease ("Paragraph 6.6.D"), a

subpart of the provision titled "BUILDING OPERATING PLAN" stated, in relevant part:

> The Lessor shall maintain the leased premises, including outside areas, in a clean condition and shall provide supplies and equipment. The following

---

[2] "Claremont provided janitorial services … through Eastco Building Services." (Dkt. 12-1 at 7.)

3

>schedule describes the level of services intended.  Performance will be based on the Contracting Officer's evaluation of results, not the frequency or method of performance.
>
>1. *Daily.*  Empty trash receptacles, and clean ashtrays.  Sweep entrances, lobbies, and corridors.  Spot sweep floors, and spot vacuum carpets.  Clean drinking fountains.  Sweep and damp mop or scrub toilet rooms.  Clean all toilet fixtures, and replenish toilet supplies.  Dispose of all trash and garbage generated in or about the building. Wash inside and out or steam clean cans used for collection of food remnants from snack bars and vending machines.  Dust horizontal surfaces that are readily available and visibly require dusting.  Spray buff resilient floors in main corridors, entrances, and lobbies.  Clean elevators and escalators.  Remove carpet stains.  Police sidewalks, parking areas, and driveways.  Sweep loading dock areas and platforms.  Clean glass entry doors to the Government-demised area.

(Id.)

Paragraph 7.1 of the section of the Lease titled "SAFETY AND ENVIRONMENTAL MANAGEMENT" ("Paragraph 7.1") stated as follows:

>7.1 OCCUPANCY PERMIT (SEP 2000)
>
>The Lessor shall provide a valid occupancy permit for the intended use of the Government and shall maintain and operate the building in conformance with current local codes and ordinances.  If the local jurisdiction does not issue occupancy permits, the Offeror shall consult the Contracting Officer to determine if other documentation may be needed.

(Id. at 32.)

Paragraph 7.5 of the section of the Lease titled "SAFETY AND ENVIRONMENTAL MANAGEMENT" ("Paragraph 7.5") stated as follows:

>7.5 OSHA REQUIREMENTS (SEP 2000)
>
>The Lessor shall maintain buildings and space in a safe and healthful condition according to OSHA standards.

(Id.)

## II. PROCEDURAL HISTORY

Plaintiff filed an administrative claim regarding her slip and fall with the GSA on October 17, 2014. (Dkt. 1 at 3.) "GSA denied Plaintiff's claim on February 23, 2015." (Id.) "Plaintiff submitted an appeal to the GSA denial on March 2, 2015." (Id.) GSA denied Plaintiff's appeal on April 7, 2015. (Id.)

Plaintiff filed this action on October 5, 2015. (Id.) Defendant moved to dismiss the complaint on June 10, 2016. (Dkt. 12.) Plaintiff opposed that motion on June 30, 2016. (Dkt. 13.)

The Court will decide the motion without oral argument and on the papers pursuant to Local Civil Rule 78.1(b). The Court will analyze the applicable legal standards and consider the parties' arguments below.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) at any time during the course of litigation. Fed.R.Civ.P. 12(b)(1); Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 437–38 (D.N.J. 1999). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." Common Cause of Pa. v. Pa., 558 F.3d 249, 257 (3d Cir. 2009) (internal citation and quotation omitted). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because … it does not present a question of federal law, or because … some other jurisdictional defect is present." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358

(3d Cir. 2014).

When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). A court, upon reviewing a facial attack, may dismiss the complaint "only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." Iwanowa, 67 F.Supp.2d at 438.

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case … do not support the asserted jurisdiction." Aichele, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Courts are permitted, however, to weigh and consider evidence "outside the pleadings" to decide whether subject matter jurisdiction is proper. Aichele, 757 F.3d at 358 (internal citation and quotation omitted). A court, upon reviewing the merits of the jurisdiction claims, may consider, for example, affidavits, depositions, and testimony to evaluate "factual issues bearing on jurisdiction." Iwanowa, 67 F.Supp.2d at 438. Based upon its review of that evidence, a court may make factual findings, beyond the pleadings, to determine whether jurisdiction is proper. See, e.g., CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008).

**B.     The Federal Torts Claims Act ("FTCA")**

The United States is immune from suit except where Congress has waived that

immunity, such as under the FTCA.  United States v. Orleans, 425 U.S. 807, 813–15 (1976); Norman v. United States, 111 F.3d 356, 357–58 (3d Cir. 1997).  Pursuant to the FTCA, federal district courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States … would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  An employee of the Government includes, inter alia, "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation …."  28 U.S.C. § 2671.

The applicability of the FTCA is not absolute, and an exception applies when the Government utilizes the services of independent contractors (hereinafter "the independent contractor exception").  Orleans, 425 U.S. at 814–15.  The independent contractor exception applies unless a federal district court determines that the Government supervised an independent contractor's day-to-day operations.  Id. at 815.  Thus, "[t]he critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power to control the detailed physical performance of the contractor."  Norman, 111 F.3d at 357.  Only convincing proof that a federal employee exercised supervisory control over an independent contractor's daily operations will subject the Government to liability for the negligence of its contractor.  Orleans, 425 U.S. at 814–17.  A contract between the Government and an independent

7

contractor need not expressly state that the Government "will refrain from exercising supervision for an independent contractor relationship to exist." Pace v. United States, No. 07-3882, 2008 WL 4559598, at *3 (D.N.J. Oct. 9, 2008).

### IV.     APPLICATION OF LEGAL STANDARD

#### A.     Defendant's Arguments

Defendant argues that here, Plaintiff "seeks to hold the United States liable for alleged acts or omissions of the Government's independent contractor Claremont." (Dkt. 12-1 at 13.)  Defendant, in support of that argument, contends that Claremont: (1) "was responsible for all maintenance and janitorial services" at the SSAO; and (2) "instructed the cleaning person that it provided on what specific services were required under the lease." (Id.)  Moreover, according to Defendant, "[t]he cleaning person that Claremont provided did not report to anyone at the" SSAO "when she arrived to clean the space, nor was she required to sign in and out or otherwise record when she arrived or left the office." (Id. at 14.)

Defendant also contends that no Government employees supervised the day-to-day operation of the janitorial services provided at SSAO. (Id.)  According to Defendant, GSA did not provide cleaning supplies to the janitorial staff or "supervise[] the day-to-day operations of the personnel provided by Claremont." (Id.)[3]  Defendant therefore concludes that Claremont was an independent contractor, which "retained authority in determining how to perform its day-to-day functions[,]" and argues that the independent

---

[3] Defendant, in support of this argument, cites to Paragraph 10, discussed supra Sec.I.C. (Dkt. 12-1 at 14.)

contractor exception bars Plaintiff's claims.  (Id. at 14–15.)[4]

### B. Plaintiff's Arguments

Plaintiff argues "that maintaining [a] property in a slip-free condition was solely the responsibility of the government and therefore the independent contractor exception does not apply" here.  (Dkt. 13 at 5.)  Plaintiff, with respect to Paragraphs of the Lease discussed supra Sec.I.C, contends that Claremont "was to provide some, but not all, of the cleaning and maintenance duties" at the SSAO.  (Id. at 6.)  However, Plaintiff concedes that the Lease: (1) "set forth a schedule of cleaning and maintenance activities"; and (2) required employees hired by Claremont to "remove snow and ice from entrances, exterior walks, and parking lots of the building" on as "as required" basis.  (Id. (internal quotation omitted).)[5]

Plaintiff contends that the Lease does not address: (1) "Claremont's responsibility to remove, clear[,] or prevent the collection of rainwater from the building"; (2) "who is responsible for spillage clean up or for preventing hazardous or dangerous walking conditions in the building"; or (3) Defendant's "ability or inability to supervise the day-to-day operations of the Claremont or the employees responsible for cleaning and maintenance."  (Id.)  Moreover, according to Plaintiff, the Lease does not: (1) "require a superintendent of Claremont or their representative to be on site during … office hours";

---

[4] Defendant cites to Paragraph 6.1, Paragraph 6.6.D, Paragraph 7.1, Paragraph 7.5, and Paragraph 10, discussed supra Sec.I.C, to support that argument.  (Dkt. 12-1 at 7, 14–15; dkt. 16 at 8–11.)

[5] Plaintiff, with respect to the second concession, notes that the Lease does not define the words "entrance" or "as required."  (Dkt. 13 at 6.)

(2) "state that only Claremont will be responsible for the acts and omissions of its employees"; and (3) "address which party would be responsible for the supply, selection[,] and placement of entrance mats or caution wet floor signs." (Id.) Plaintiff also states that "the Lease does not hold the contractor responsible for cleaning up spills or slip hazards" or "state that only … [Claremont] was responsible for the acts and omissions of its employees[.]" (Id. at 10–11.)

Plaintiff contends that Paragraph 6.1, discussed supra Sec.I.C, "strongly suggests [that] Claremont is not required to have a supervisor on site" because the terms "deficiencies[,]" "available[,]" and "promptly" are undefined under the Lease. (Id. at 10.) Thus, because the Lease, in Plaintiff's view, does not "require on-site supervision" by Claremont, Plaintiff argues that "it is entirely plausible that a government employee would be put in a situation to manage, oversee[,] or instruct a Claremont employee or other contracted employee how and when to perform their jobs." (Id.)

**C.     Analysis**

The parties agree that Defendant presents a factual challenge to the Court's subject matter jurisdiction. (Dkt. 13 at 7; dkt. 12-1 at 9.) The Court, therefore, is free to weigh evidence beyond the plaintiff's allegations in order to determine whether jurisdiction is proper. Aichele, 757 F.3d at 358.

The Court finds that Plaintiff fails to demonstrate that the Government retained control over Claremont's day-to-day services sufficient to survive Defendant's motion to

10

dismiss. Pace, 2008 WL 4559598, at *3–*4.[6] GSA, by the Paragraphs of the Lease discussed supra Sec.I.C, had no power "to control the detailed physical performance of" the contracted cleaning services. Id. at *3 (internal quotation omitted). Paragraph 6.1 and Paragraph 6.6.D of the Lease, for example, required that Claremont: (1) "have a building superintendent or a locally designated representative available to promptly correct deficiencies"; and (2) "maintain the leased premises, including outside areas, in a clean condition …." See supra Sec.I.3. Moreover, Paragraph 10 of the Lease required Claremont to "provide all labor and materials" related to cleaning services. See supra id. Accordingly, the Court finds sufficient evidence that Claremont bore responsibility to supervise the day-to-day operations of the cleaning services performed at the SSAO. Pace, 2008 WL 4559598, at *3–*4.[7]

The Court also finds evidence that Defendant placed "responsibility for safety precautions in relation to the cleaning services" on Claremont. Pace, 2008 WL 4559598, at *3. Paragraph 7.1 and Paragraph 7.5 of the Lease bestowed precautionary duties on Claremont, by requiring that it: (1) "maintain and operate the building in conformance with current local codes and ordinances"; and (2) "maintain buildings and space in a safe and healthful condition according to OSHA standards." See supra Sec.I.C. Accordingly, the Court, based upon the above-described Paragraphs of the Lease, concludes that

---

[6] Plaintiff has not produced any evidence to support a finding that Defendant supervised or controlled the day-to-day operations of Claremont's janitorial staff.

[7] The Court also concludes that Claremont "was given broad responsibilities for daily maintenance" of the SSAO. Norman, 111 F.3d at 357. See also supra Sec.I.C.

11

Plaintiff's arguments are "insufficient to overcome the overwhelming indication[] … [that Claremont] is in fact an independent contractor." Pace, 2008 WL 4559598, at *3.[8]

The record is devoid of evidence that Defendant's employees supervised the day-to-day operations of Claremont or Eastco Building Services. See supra Sec.I.C n. 2.[9] Rather, the Paragraphs of the Lease described above demonstrate that Claremont supervised the day-to-day operations of the SSAO cleaning staff. Indeed, the very purpose of the contract was to "turn over the day-to-day management of the" janitorial services. Smith v. Steffens, 429 F.Supp.2d 719, 721 (E.D. Pa. 2006).[10] The Court finds that the independent contractor exception applies to Plaintiff's claims, and will therefore grant Defendant's motion to dismiss for lack of subject matter jurisdiction. Pace, 2008 WL 4559598, at *4–*5.

---

[8] This case is distinguishable from the primary case upon which Plaintiff relies, Dugan v. Coastal Indus., 96 F.Supp.2d 481 (E.D. Pa. 2000). The contract at issue in Dugan required the Government to notify the contractor of its need for "emergency services" or "special cleaning duties." Id. at 484 (internal quotation omitted). Thus, the Dugan court found that "[o]n the face of the contract the responsibility for inspecting for and supervising the clean-up of spills and wet spots" on the premises "lay with the United States." Id. The Lease at issue here placed no comparable responsibility on the Government to inspect for water accumulations. See supra Sec.I.C.

[9] The Court rejects Plaintiff's argument regarding the undefined terms in the Lease, discussed supra Sec.IV.B, because "[t]he contract need not expressly state that the government will refrain from exercising supervision for an independent contractor relationship to exist." Pace, 2008 WL 4559598, at *3.

[10] GSA delegated the responsibility to supervise and manage the janitorial services at SSAO, as demonstrated by the extensive duties described in the Lease. Steffens, 429 F.Supp.2d at 721. See also supra Sec. I.C.

## CONCLUSION

The Court, for the above-stated reasons, will grant Defendant's motion for to dismiss the complaint under Rule 12(b)(1).  The Court will issue an appropriate order and judgment.

 s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:** August 26, 2016